# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD MINTON, | CV F   06-00806 AWI SMS HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| | [Doc. 1] |
| J. CLARKE, WARDEN, et.al., | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation (CDCR), following his 1993 conviction for first degree murder. (Exhibit A, attached to Answer.) Petitioner is serving a 25 year-to-life sentence for the murder conviction, plus one year for being armed during the commission of the murder. (Id.) Petitioner was also convicted of second degree robbery, burglary, and five counts of auto theft. (Id.)

In the instant petition, Petitioner does not challenge the validity of his conviction; rather, he alleges that the Board of Parole Hearings' (BPH) decision finding him unsuitable for parole at his March 16, 2005, parole hearing was not supported by "some evidence."

Petitioner filed a petition for writ of habeas corpus in the Alameda County Superior Court challenging the BPH's decision denying him parole. (Exhibit E.) On January 11, 2006, the

Alameda County Superior Court denied the petition in a reasoned decision. The Court found that there was "some evidence" to support the BPH's decision, and found that the decision was arbitrary or capricious. (Id.)

Petitioner next filed a petition for writ of habeas corpus in the California Court of Appeal, First Appellate District. The petition was summarily denied. (Exhibit F.)

Petitioner finally filed a petition in the California Supreme Court, which was summarily denied on May 24, 2006. (Exhibit F.)

Petitioner filed the instant petition for writ of habeas corpus on June 9, 2006, in the United States District Court for the Northern District of California. By order of June 15, 2006, the action was transferred to the United States District Court for the Eastern District of California, Fresno Division. (Court Doc. 1.)

On October 16, 2006, Respondent filed an answer to the petition, and Petitioner filed a traverse on November 6, 2006. (Court Docs. 7, 8.)

STATEMENT OF FACTS[1]

> [Petitioner] and [co-defendant] Richard Wilson went to Henne Motors on October 23, 1986, to "move cars." [Petitioner] was armed with a knife. When they arrived at the car lot, Mr. Ballard was angry with Mr. Wilson because he did not return a Corvette he had borrowed earlier. [Petitioner] followed Mr. Wilson as he ordered Chester Ballard back into his living quarters. There, [Petitioner] gave his knife to Mr. Wilson in order to cup up a cord to tie up the victim. He watched as the victim was tied, gagged, blindfolded, beaten, stabbed, and had his throat slit. [Petitioner] admitted holding the victim's feet still because his body fluids were in his throat gurgling and making him uncomfortable. After the victim was killed, [Petitioner] assisted Richard Wilson in placing his body in the trunk of a stolen Cadillac from Henne Motors. He and Mr. Wilson then drove the car off of the car lot to the area of 136th Avenue in San Leandro. When the car ran out of gas, they abandoned it. Later, [Petitioner] assisted Mr. Wilson in burglarizing Henne Motors and driving away five vehicles. The vehicles were later found near [Petitioner's] home on Grove Way. When contacted by the police, [Petitioner] was working on a stereo that was to be installed in a stolen truck.

(Exhibit D, at p.7.)

DISCUSSION

I.  Standard of Review

---

[1] This statement of facts is taken from the Probation Officer's Report and Recommendation. (Exhibit D, attached to Answer.)

1    On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act
2 of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its
3 enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries
4 v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th
5 Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy,
6 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).
7 The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its
8 provisions.

9    Petitioner is in custody of the California Department of Corrections pursuant to a state
10 court judgment. Even though Petitioner is not challenging the underlying state court conviction,
11 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the
12 threshold requirement of being in custody pursuant to a state court judgment. Sass v. California
13 Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370
14 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a
15 state prisoner in custody pursuant to a state court judgment, even when the petition is not
16 challenging his underlying state court conviction.'").

17    The instant petition is reviewed under the provisions of the Antiterrorism and Effective
18 Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S.
19 63, 70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless
20 the adjudication of the claim "resulted in a decision that was contrary to, or involved an
21 unreasonable application of, clearly established Federal law, as determined by the Supreme Court
22 of the United States" or "resulted in a decision that was based on an unreasonable determination
23 of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.
24 § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

25    As a threshold matter, this Court must "first decide what constitutes 'clearly established
26 Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,
27 *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this
28 Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as

3

of the time of the relevant state-court decision." <u>Id.</u>, *quoting* <u>Williams</u>, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." <u>Id</u>.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." <u>Lockyer</u>, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." <u>Williams</u>, 529 U.S. at 413; <u>see also</u> <u>Lockyer</u>, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Id</u>. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." <u>Id</u>. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. <u>Baylor v. Estelle</u>, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See <u>Clark v. Murphy</u>, 331 F.3d 1062, 1069 (9th Cir.2003); <u>Duhaime v. Ducharme</u>, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. <u>Souch v. Schaivo</u>, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*,

4

537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

II.     Review of Claims

A parole release determination is not subject to all of the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 12 (1979) (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole." Id.

"In Superintendent, Mass. Correc. Inst. v. Hill, the Supreme Court further held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass, 461 F.3d at 1128. In determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Id. Rather, the Court must determine whether there is any evidence in the record that could support the conclusion of the disciplinary board. Id., *citing* Superintendent v. Hill, at 455-56. Although Hill involved the accumulation of good time credits, the same standard applies to parole, as both situations "directly affect the duration of the prison term." Id., *citing* Jancsek v. Oregon Bd. of Parole, 833 F.2d at 1390.

With regard to the procedural protections outlined in Greenholtz, as Respondent submits, Petitioner was provided all that is required. Petitioner was provided with advance notice of the hearing, an opportunity to submit materials for the BPH's consideration, an opportunity to be

5

1  heard during the hearing, and a written decision explaining the reasons that parole was denied.

2  At his second parole hearing, the BPH denied Petitioner parole based on the cruelty and
3  callousness of the commitment offense, he was on probation at the time of the offense, and the
4  District Attorney's opposition.

5  In reviewing this claim, because the California Supreme Court's opinion is summary in
6  nature, this Court "looks through" that decision and presumes it adopted the reasoning of the
7  Alameda County Superior Court, the last state court to have issued a reasoned opinion. See Ylst
8  v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991)
9  (establishing, on habeas review, "look through" presumption that higher court agrees with lower
10 court's reasoning where former affirms latter without discussion); see also LaJoie v. Thompson,
11 217 F.3d 663, 669 n. 7 (9th Cir.2000) (holding federal courts look to last reasoned state court
12 opinion in determining whether state court's rejection of petitioner's claims was contrary to or an
13 unreasonable application of federal law under § 2254(d)(1)).  The state courts' determination of
14 this issue was not contrary to, or an unreasonable application of, clearly established Supreme
15 Court precedent.

16 First, the BPH denied parole finding that the commitment murder offense was carried out
17 in an exceptionally cruel, callous, violent and brutal manner.[2]  (Exhibit B, at 46.)  The BPH cited
18 the fact that victim was mutilated, beaten with a handle to a car jack, stabbed, and had his throat
19 cut.  (Id.)  The BPH recognized that Petitioner's co-defendant was the person who actually beat,
20 stabbed, and cut the throat of the victim; however, Petitioner held the victim's feet down while
21 he was flailing, prior to being stabbed and having his throat cut.  Subsequent to the death of the

---

[2] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c)(1) sets forth circumstances tending to demonstrate unsuitability for parole regarding the committed offense.  The factors to be considered include:
    (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
    (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
    (C) The victim was abused, defiled or mutilated during or after the offense.
    (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
    (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

1 victim, Petitioner participated in removing the vehicles from the lot. (Id. at 47.) Thus, some
2 evidence supports the BPH's finding.

3     Second, the BPH cited that Petitioner had a prior record of false information to a peace
4 officer, to which he was placed on probation, and was on probation at the time of the
5 commitment offense. (Id. at 47.) Section 2402(b) allows the BPH to consider "past criminal
6 history, including involvement in other criminal misconduct which is reliably documented." In
7 addition, section 2402(b) states that "[a]ll relevant, reliable information available to the panel
8 shall be considered in determining suitability for parole." Thus, it was not improper for the BPH
9 to consider this evidence in its determination.

10     Third, the BPH cited the District Attorney's opposition to parole. (Id. at 48.) This was
11 properly considered pursuant to California Penal Code section 3042(a) and (f)(3), and 15 C.C.R.
12 § 2402(b).

13     In denying parole for a term of two years, the BPH stated:

> The inmate needs additional time in order to fully understand and deal with the consequences of his acts. Nevertheless, he should be commended for completing vocations in Upholstery and Mill and Cabinet and being 115 free since 1998, for being involved in AA and 12-Step programming, for being a Teacher's Aide and completing (indiscernible) intensive (indiscernible) educational programs and other areas of self-help. However, these positive aspects of his behavior do not outweigh the factors of unsuitability. In a separate decision, the hearing Panel finds that it is not reasonable to expect that parole would be granted at a hearing during the following two years. The specific reasons for these findings are as follows: The prisoner committed the offense in an exceptionally violent, cruel, callous and brutal manner. Specifically, on or about October 23rd, 1976 - - excuse me, '86, along with a crime partner, did participate in the murder of one Chester Ballard, B-A double L-A-R-D. Mr. Ballard was the caretaker of a car lot. The crime partner and the inmate apparently were going to remove some vehicles from the car lot, either without the permission or the collusion of Mr. Ballard. As a result, [Petitioner's] crime partner used a handle to a car - - a floor jack, striking the victim and knocking him apparently into sem-consciousness or unconsciousness. The victim was tied. He apparently was still alive. [Petitioner] placed his foot or the cords that were - - that were holding the victim's feet together while the crime partner took a knife from the inmate and stabbed him and slit the throat of the victim, causing his death. The victim was mutilated, stabbed, beaten and had his throat cut. The offense was carried out in a manner which demonstrated an exceptionally callous disregard for human life. The inmate was on probation at the time of the instant offense. Therefore, a longer period of observation and evaluation of the prisoner is required before the Board should find that he is suitable for parole. The Penal makes the following recommendations: The inmate remain disciplinary free, that he continue participating in self-help help [sic] as he is doing now and to cooperate in the completion of any future clinical evaluation.

7

(Exhibit B, at 49-50.)

In his traverse, Petitioner contends that his commitment offense was not "especially heinous, atrocious or cruel." In order to find that an offense was committed "in an especially heinous, atrocious or cruel manner" there must be some evidence that the "violence and viciousness of the inmate's crime" is greater than that which is "minimally necessary to convict [the defendant] of the offense for which he is confined. (15 CCR § 2402(c)(1); In re Dannenberg, 34 Cal.4th 1061, 1095 (2005). Here, as previously stated, Petitioner was convicted of first degree murder. First degree murder is defined as "murder which is perpetrated by any kind of willful, deliberate and premeditated killing with express malice aforethought. [¶] The word 'willful,' as used in this instruction, means intentional. [¶] The word 'deliberate' means formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action. The word 'premeditated' means considered beforehand." (CALJIC 8.20.) Malice by itself involves "'an element of viciousness-an extreme indifference to the value of human life.'" (People v. Summers, 147 Cal.App.3d 180, 184 (1983).

Here, the BPH pointed to the fact that the victim was mutilated, beaten, stabbed, and cut in the throat, and while Petitioner may not have actually performed the killing, he nonetheless was present and assisted his co-defendant in holding down the feet of the victim while he was flailing. This clearly demonstrates an offense carried out in a dispassionate manner and with callous disregard for human suffering, and the factual circumstances surrounding the murder were greater than that which is minimally necessary for a conviction of second degree murder.

Petitioner's claim that his sentence exceeds the uniform matrix term, is likewise without merit. Title 15, of the California Administrative Code, section 2403(a) applies only to inmates who have been found suitable for parole. 15 Cal. Admin. Code § 2403(a). Additionally, in Dannenberg, the California Supreme Court held that the Board is not required to refer to the sentencing matrices or other crimes of the same type in determining whether the prisoner is suitable for parole. In re Dannenberg, 34 Cal.4th 1061, 1091 (2005).

To the extent Petitioner contends that the BPH's continued reliance on his commitment

offense and prior criminal history violates due process, his claim fails. In <u>Biggs v. Terhune</u>, 334 F.3d 910 (9th Cir. 2003), the Ninth Circuit stated that "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." <u>Id</u>. at 916-917. In <u>Sass</u>, the Ninth Circuit stated that "[u]nder AEDPA it is not our function to speculate about how future parole hearings could proceed." 461 F.3d 1123, 1129 (9th Cir. 2006). The Court upheld the denial of parole based on Sass's commitment offense and prior criminal history because it was "some evidence" supporting the Board's decision. Recently in <u>Iron v. Carey</u>, ___ F.3d ___, 2007 WL 2027359, as amended, (July 13, 2007), petition for rehearing en banc pending, the Ninth Circuit again upheld the denial of parole based on the prisoner's commitment offense and prior criminal history, stating that "in all the cases in which we have held that a parole board's decision to deem a prisoner unsuitable for parole solely on the basis of his commitment offense comports with due process, the decision was made before the inmate had served the minimum number of years required by his sentence." <u>Irons</u>, at *6. In <u>Biggs</u>, <u>Sass</u>, and <u>Irons</u>, like here, the petitioners had not served the minimum number of years in which they were sentenced.[3] Here, this was Petitioner's only second parole hearing and he has not yet served the minimum number of years to which he was sentenced. Given the circumstances of Petitioner's commitment offense, the BPH could clearly rely on the circumstances of his offense as a basis in denying parole, and some evidence supports this finding. Thus, it simply cannot be said that the state court unreasonably applied <u>Hill</u>'s "some evidence" standard.

RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be DENIED; and
2. The Clerk of Court be directed to enter judgment in favor of Respondent.

---

[3] Here, as previously stated, Petitioner was convicted of first degree murder in 1993, and sentenced to 26-years to life in prison. Thus, at the time of his 2005 parole hearing, Petitioner has not served the minimum time to which he was sentenced.

1  This Finding and Recommendation is submitted to the assigned United States District
2  Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of
3  the Local Rules of Practice for the United States District Court, Eastern District of California.
4  Within thirty (30) days after being served with a copy, any party may file written objections with
5  the court and serve a copy on all parties.  Such a document should be captioned "Objections to
6  Magistrate Judge's Finding and Recommendation."  Replies to the objections shall be served and
7  filed within ten (10) court days (plus three days if served by mail) after service of the objections.
8  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).
9  The parties are advised that failure to file objections within the specified time may waive the
10 right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
11 IT IS SO ORDERED.

**Dated:   August 1, 2007**                       /s/ Sandra M. Snyder
                                        UNITED STATES MAGISTRATE JUDGE